```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/26/2024
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARILENA C. PAROLISE,

                                    Petitioner,

                    -against-

PORTFOLIO RECOVERY ASSOCIATES, LLC,

                                    Respondent.

**REPORT & RECOMMENDATION
ON MOTION TO DISMISS AND
MOTION TO STAY ARBITRATION**

**24-CV-1382 (GHW) (KHP)**

**TO: THE HONORABLE GREGORY H. WOODS, United States District Judge
FROM: THE HONORABLE KATHARINE H. PARKER, United States Magistrate Judge**

This action arises out of a $8,190.99 debt allegedly owed by Petitioner Marilena

Parolise, who lives in Tampa Florida, to Synchrony Bank/ Care Credit ("Synchrony"). Parolise

disputed that she owed the debt, and Synchrony later sold the debt to Respondent Portfolio

Recovery Associates, LLC ("PRA"), a Delaware corporation with its principal place of business in

Norfolk, Virginia, which then made efforts to collect the debt. To this end, on July 1, 2022, PRA

filed a debt collection lawsuit in state court in Tampa, Florida against Parolise. In response to

that lawsuit, Parolise moved to compel arbitration of the dispute, which the Court granted on

January 11, 2023. Parolise filed a demand for arbitration with JAMS on February 2, 2023

asserting various counterclaims against PRA in the arbitration, including for violations of the

Fair Credit Reporting Act ("FCRA") and Fair Debt Collection Practices Act ("FDCPA"). (ECF Nos.

5-2, 5-4.) The Honorable Sherry Klein Heitler (Ret.) was selected as the Arbitrator. The

arbitration proceeding commenced in October 2023 with a remote hearing (the "Arbitration").

On November 28, 2023, Arbitrator Heitler issued an interim award ("Interim Award"), which

denied Parolise's motion for summary judgment, denied without prejudice PRA's motion for

1

summary judgment on its collection claim, granted PRA's motion for summary judgment on four claims asserted by Parolise against PRA (including her claims under sections 1692e(2)(a-b) and 1692f(1) of the FDCPA) but denied PRA's motion for summary judgment on five other claims asserted by Parolise against it (including claims under section 1692g(b), 1692d(5), 1692c, and 1692d(c) of the FDCPA and section 1681s-2 of the FCRA) on the grounds that additional evidence would need to be evaluated at a merits hearing.  (ECF No. 5-1.)

The Interim Award rejected applicability of New York and Florida law on the ground that the governing arbitration provision provided for applicability of the Federal Arbitration Act ("FAA") and Utah law.  Thus, the arbitrator applied federal and Utah law in her decision.  She expressly rejected Parolise's argument that the parties chose for the arbitration to be "seated" in New York.   In reaching her decision in denying some of Parolise's claims, the arbitrator also rejected Parolise's contention that PRA had submitted false evidence, finding Parolise's accusations to be without factual support.

On February 22, 2024, Petitioner filed this action seeking to vacate the Interim Award, pursuant to the FAA, 9 U.S.C. § 6.  (ECF No. 1.)   On February 23, 2024, Parolise filed an amended petition to vacate the Interim Award, which is the operative petition (the "Petition"). (ECF No. 5.)  PRA has moved to dismiss the petition (ECF No. 36) and Parolise has moved to stay the Arbitration (ECF Nos. 33-34).  I address both motions below.

**BACKGROUND**

Parolise's demand for arbitration was premised on the arbitration provision in the credit card agreement she had with Synchrony.  (ECF No. 5-3.)  The agreement in relevant part states that it applies to "any dispute or claim between you (including any other user of your account),

2

and us (including our parents, affiliates, agents, employees, officers, and assignees) that directly or indirectly arises from or relates to your account, your account Agreement or our relationship" with certain exceptions that do not apply here. *Id.* The arbitration provision "broadly covers claims based upon contract, tort, consumer rights, fraud and other intentional torts, negligence, constitution, statute, regulation, ordinance, common law and equity and claims for money damages and injunctive or declaratory relief." *Id.* Thus, it is clear that PRA's collection claims and Parolise's counterclaims fall within the scope of the arbitration provision.

The agreement further permits either party to elect arbitration at any time, even when there is a pending lawsuit. *Id.* The procedure for demanding arbitration is to send notice and file a demand for arbitration with either the American Arbitration Association ("AAA") or JAMS (both headquartered in New York). *Id.* The arbitration administrator then appoints an arbitrator who must be a lawyer with at least 10 years of legal experience. *Id.* Importantly for this action, the agreement states that the "arbitration will take place by phone or at a location reasonably convenient to you." *Id.* This is consistent with JAMS's Consumer Arbitration Minimum Standards, which provide that a consumer "must have a right to an in-person hearing in his or her hometown area." (ECF No. 5-2 at 11 ¶ 5.) The credit card agreement further states that "[a]ny court with jurisdiction may enter judgment upon the arbitrator's award." (ECF No. 5-3.) Finally, the contract between Parolise and Synchrony also states that it is governed by the FAA and, if state law is relevant, by Utah law. *Id.*

As noted above, PRA's initial suit and Parolise's counterclaims all arise from events that occurred in Hillsborough County, Florida, where Tampa is located and where Parolise lives. The Arbitration has taken place remotely, with Parolise and PRA's counsel participating from Florida

where they are physically located, and with Arbitrator Heitler appearing from New York. No evidence in the underlying matter was gathered in New York. No witnesses in the underlying dispute appear to be located in New York. The final hearing, which will be remote, is scheduled for September 2024.

Parolise contends that she is being "coerced to proceed to a final arbitration hearing during which phony documents will be used against her and were accepted into evidence by Arbitrator Heitler, against all rules of evidence and any basic common sense." (Motion to Stay Arbitration, ECF Nos. 34.) She seeks to stay the Arbitration and vacate the Interim Award on the grounds that the award was based on fabricated evidence, including an allegedly fake credit card agreement that provides incorrect information about late fee amounts and a false affidavit of one Marybeth Ruiz regarding the debt owed by Parolise. Parolise also suggests that Arbitrator Heitler is applying incorrect law, allowing forged documents as evidence without an evidentiary hearing and is biased in favor of PRA.

### MOTION TO DISMISS

PRA seeks dismissal on the grounds that the Petition to Vacate is untimely, that the Court lacks subject matter jurisdiction to vacate an interlocutory arbitration ruling, lacks personal jurisdiction over PRA and that venue is improper in this District. I first address PRA's argument that the Court lacks subject matter jurisdiction. I then turn to personal jurisdiction and venue. *Alliance for Environmental Renewal, Inc. v. Pyramid Crossgates Co*., 436 F.3d 82, 85 (2d Cir. 2006) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)) (district court must determine whether it has subject matter jurisdiction before deciding case on merits); *Mones v. Commer. Bank of Kuwait*, 204 Fed. Appx. 988, 989 (2d Cir. 2006) (citing

4

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)) (district court should determine whether it has personal jurisdiction over a defendant before deciding case on the merits).

### 1. *Subject Matter Jurisdiction*

PRA's motion to dismiss for lack of subject matter jurisdiction is brought pursuant to Federal Rule of Civil Procedure 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Jurisdiction must be shown affirmatively and the court may "refer to evidence outside the pleadings." *Id.* (citations omitted). The Court must draw all inferences in favor of the party asserting jurisdiction. *Id.*

It is well established that a district court does not have power to review an interlocutory ruling by an arbitrator, but rather can only review final orders. *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2d Cir. 1980) ("Where, as here, arbitrators make an interim ruling that does not purport to resolve finally the issues submitted to them, judicial review is unavailable."). Generally, in order for a claim to be considered final, "the arbitrators must have decided not only the issue of liability of a party on the claim, but also the issue of damages." *Id.* A final order is a complete determination of the claims submitted to arbitration. *Id.* at 413; *Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 157 F.3d 174, 176 (2d Cir. 1998). "[U]nder Second Circuit precedent, arbitration awards that require 'further adjudication' are presumptively not final." *Bugtani v. Dish Network LLC*, No. 18CV5003AMDMMH, 2022 WL 3227132, at *3 (E.D.N.Y. Aug. 10, 2022) (citing *Rocket Jewelry Box, Inc.*, 157 F.3d at 176).

Parolise cites several cases that are distinguishable because they fall under an exception to the finality principle, which does not apply here. Pursuant to this exception, "[a]n award that

finally and conclusively disposes of a separate independent claim may be confirmed even if it does not dispose of all the claims that were submitted to arbitration." *Kerr Mc–Gee Ref. Corp. v. M/T Triumph*, 924 F.2d 467, 471 (2d Cir. 1991).  In contrast to the Interim Award in the present case, the cases Parolise relies on all involved awards that disposed of separate and independent claims.  *See Zeiler v. Deitsch*, 500 F.3d 157, 168-69 (2d Cir. 2007) (holding that several accounting orders concerning the accounting and transfer of documents were final and therefore reviewable because they ordered specific action and did not serve as a preparation or basis for further decisions by the arbitrators); *Ecopetrol S.A. v. Offshore Exploration & Prod. LLC*, 46 F. Supp. 3d 327, 336-37 (S.D.N.Y 2014) (concluding that the interim awards were final because they required specific action (tendering payment), and the arbitrators made clear that the interim awards had no impact on the ultimate issue of liability because they involved separate claims); *Sperry International Trade, Inc. v. Government of Israel*, 532 F. Supp. 901, 909 (S.D.N.Y. 1982) (concluding the arbitration award was final because it required affirmative action concerning a severable issue and the award itself specifically stated that either party could move to confirm or enforce the award in federal court); *Metallgesellschaft A.G. v. M/V Capitan Constante*, 790 F.2d 280, 283 (2d Cir. 1986) (finding that the partial final award was final because it concerned a separate, independent claim that was wholly independent of other issues and could be disposed of separately); *Home Ins. Co. v. RHA/Pennsylvania Nursing Homes*, 127 F. Supp. 2d 482, 490 (S.D.N.Y. 2001) (concluding an award was final because it determined petitioner was immediately entitled to a sum certain during the pendency of the arbitration and therefore concerned a separate and independent claim).

Here, the Interim Award did not order specific action, nor did it direct the payment of a sum certain.  The Interim Award also did not purport to be a final award.  Arbitrator Heitler granted PRA's motion for summary judgment as to four of Parolise's claims, three of which concerned alleged violations of the FDCPA, but Arbitrator Heitler denied summary judgment as to the remaining claims, including several FDCPA claims, and directed that the surviving claims would be handled at a merits hearing.  Therefore, the Interim Award did not dispose of separate and independent claims, but rather disposed of only a portion of the FDCPA and FCRA claims, with the remainder proceeding to a merits hearing.  Further, all of the claims and theories, both those dismissed and remaining, arise out of the same conduct.

In addition, Parolise herself concedes in the Petition that "[a]lthough no monetary award has been granted [in the Interim Award], Arbitrator Heitler had previously invited Respondent, on several occasions, to submit a request for a monetary award, to be reimbursed for arbitration costs and attorney [sic] fees at the conclusion of the arbitration proceedings."  In other words, the Interim Award was clearly not a final award because it ordered adjudication on the merits and did not address any monetary judgment because the issue of damages will be decided in a final award at the conclusion of the Arbitration.  Because the Interim Award is not a final arbitration award, this Court lacks subject matter jurisdiction to vacate it.

### 2. *Personal Jurisdiction and Venue*

Even assuming the Court had subject matter jurisdiction here, venue is not proper in this District and this Court does not have personal jurisdiction over PRA.

### A.  <u>Whether the Arbitration Award Was Made Within this District</u>

The FAA provides that the parties shall designate in their arbitration agreement the court for which an award may be confirmed, vacated, or modified.  9 U.S.C. § 9.  If the parties do not specify the court for review, then an action may be brought either in the district where the award was made or in any district proper under the general venue statute.  *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193, 204 (2000); 28 U.S.C. 1391(b).   Notably, an award is "made" where the arbitration hearing is held.  *NGC Network Asia, LLC v. PAC Pac. Grp. Int'l, Inc.*, No. 09-cv-8684, 2010 WL 3701351, at *3 (S.D.N.Y. Sept. 20, 2010) (holding that a petition to confirm was properly filed in the Southern District of New York where the award was "made" in New York).  The FAA does not indicate that an arbitration is located in the district where the award was merely written or mailed.  *Id.* (citing *Motion Picture Lab'y Technicians Local 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 18 (2d Cir. 1986) ("*Motion Picture*") (explaining that signing and mailing the award is a "ministerial" action which has no bearing on jurisdiction or venue).

In *Motion Picture*, the Second Circuit considered three factors when deciding where an arbitration award was made: 1) the location of the dispute; 2) where the parties operate; and 3) where the repercussions of the arbitration will be felt.  *Motion Picture Lab'y Technicians Local 780 v. McGregor & Werner, Inc.*, 804 F.2d 16, 18 (2d Cir. 1986)  In that case, despite the fact that the arbitrator's decision was "signed, sealed, and mailed from New York," the court found that the arbitration award was "made" in Florida because the parties were located there, the locus of the dispute was in Florida, and the repercussions of the award would be felt "exclusively" in Florida.  *Id.  See also LeJacq Publ'g, Inc. v. Am. Soc'y of Contemp. Med.*, No. 88-

cv-7242, 1989 WL 37673, at *3-4 (S.D.N.Y. Apr. 11, 1989) (explaining that location of "impact of the arbitrator's decision" includes place where obligations under the parties' agreement are to be "performed or controlled").  While recognizing that the FAA's venue provision is not exclusive, the Court nevertheless reversed the judgment of the district court in New York because the parties had no ties to the Southern District of New York.  9 U.S.C. § 9; *Motion Picture*, 804 F.2d at 18-19 (quoting *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 706 (2d Cir. 1985), *cert. denied*, 475 U.S. 1067 (1986)).  *Compare Motion Picture*, 804 F.2d at  19 *with Concourse Beauty Sch., Inc. v. Polakov*, 685 F. Supp. 1311, 1315 (S.D.N.Y. 1988) (holding that this district retained jurisdiction despite the fact that the arbitration was held in Florida because plaintiff's principal place of business was in this district and the court was familiar with the facts of the litigation due to a prior action involving the same parties and similar issues).

In this case, Petitioner is a citizen of Florida and the underlying claims occurred in Florida.  (ECF No. 5, at 2, 11).  The dispute started as a lawsuit in Florida state court.  And the effects of the award are likely to be "felt" in Florida where Petitioner resides or possibly in Virginia, where PRA maintains its office.  The effects definitely will not be felt in New York, where no party resides.  *Id.* at 2-3, 11; *see Motion Picture*, 804 F.2d at 18.  The only mention of New York in the arbitration agreement is the contact information of two arbitration vendors.  (ECF 5-3, at 4).  There is no mention of a stipulated hearing location, other than that it would take place "by phone or at a location reasonably convenient to [the party seeking relief]." *Id.* Thus, in the instant case, the facts underlying the dispute took place in Florida, Petitioner resides in Florida, and the award will likely be most "felt" in Florida or, alternatively, where PRA is located.  Accordingly, the Interim Award was not made in New York.  Notably, this is

consistent with Arbitrator Heitler's finding in the Interim Award that the Arbitration is not

"seated" in New York.  (ECF No. 5-1, at 4.)  In other words, even the arbitrator does not view

the virtual Arbitration to be taking place in New York.

Venue is also not proper under the general venue statute.  28 U.S.C. 1391(b).  Pursuant

to the general venue statute, venue is proper in (i) a judicial district in which the defendant

resides, (ii) a judicial district in which a substantial part of the events or omissions giving rise to

the claim occurred, or (iii) if neither (i) or (ii) are met, any judicial district in which any

defendant is subject to the court's personal jurisdiction with respect to the action.  *Id.*  Here,

PRA does not reside in New York and the events giving rise to this action, namely, the debt

collection action, took place in Florida, not New York.  Third, as explained below, this Court

does not possess personal jurisdiction over PRA.  Accordingly, because the Interim Award was

not made in New York, and venue is not proper under the general venue statute, this district is

an improper venue for the instant case.

    **B.  <u>Whether This Court Has Person Jurisdiction over PRA</u>**

This Court also lacks personal jurisdiction over PRA.  In the Second Circuit, when a

district court relies on pleadings and affidavits, rather than conducting a "full-blown evidentiary

hearing," a plaintiff must make a *prima facie* showing that the court possesses personal

jurisdiction over the defendant.  *See DiStefano v. Carozzi North America, Inc.*, 286 F.3d 81, 84

(2d Cir. 2001).

In resolving a question of specific jurisdiction over a defendant, a district court must conduct a two-party inquiry.[1] First, it must determine whether the plaintiff has shown that the defendant is amendable to service of process under the forum state's long-arm statute; and second, it must assess whether the court's assertion of jurisdiction under the state's laws comport with the requirements of due process.[2] *Metro. Life Ins. Co. v. Robertson Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996).  The due process inquiry for establishing personal jurisdiction has two components: (1) minimum contacts and (2) reasonableness.  *Id.*  As to the first component, the defendant must have "certain minimum contacts with [the forum]" to justify the exercise of personal jurisdiction.  *See Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal citations omitted).  Where the claim "arises out of, or relates to, the defendant's contacts with the forum," that is, specific jurisdiction, minimum contacts exist where "the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir.2002) (internal quotation marks omitted).  The second component asks whether asserting personal jurisdiction over the defendant comports with "'traditional notions of fair play and substantial justice'—that is, whether it is reasonable under the circumstances of the particular case." *Metro. Life Ins. Co.*, 84 F.3d at 568 (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

---

[1]  PRA cannot be deemed to have consented to arbitration in New York because it disputes that the Arbitration is seated in New York and the arbitration agreement does not explicitly identify New York as the place where arbitration will occur.  To the contrary, as noted above, it says the arbitration will be by phone or at a place convenient to the consumer, which in this case would be Florida.

[2]  General jurisdiction does not apply because PRA is not incorporated in New York and does not maintain its principal place of business here.  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

To start, only one of the four categories of conduct that can justify specific jurisdiction under New York's long arm statute is applicable here, which is the prong that applies when a defendant transacts business within the state.[3] N.Y. C.P.L.R. § 302(a)(1).  Personal jurisdiction under Section 302(a)(1) requires that the defendant transacted business within New York *and* that the claim asserted by the plaintiff arises from that business activity.  *Licci ex rel. v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2018).  The New York Court of Appeals has "consistently held that causation is not required, and that the inquiry under the statute is relatively permissive.  But these standards connote, at a minimum, a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former[.]"  *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012).

Although it is not disputed that PRA has transacted business within New York, Section 302(a)(1) requires that the claim asserted by the plaintiff arise from the particularized business activity that connects the defendant to the forum.  The transacting business requirement of Section 302(a)(1) requires fewer contacts with New York than the general jurisdictional hook of the CPLR, but that "easing of requirements is offset by the corresponding requirement that a cause of action arise from the very transaction or transactions which are relied upon to provide the contact with the forum."  *Vasquez v. Hong Kong and Shanghai Banking Corp. Ltd.*, 477 F. Supp. 3d 241, 252-53 (S.D.N.Y. 2020) (citation omitted).  The Second Circuit has permitted an arbitration award to satisfy the "arising out of" requirement under Section 302(a), but requires

---

[3] New York's long-arm statute provides four categories of conduct to justify specific jurisdiction including: (1) the commission of tortious acts in New York, (2) the commission of tortious acts outside New York that are felt in New York, (3) the ownership of real property in New York, and (4) whether defendant transacts in any business within the state or contracts anywhere to supply goods or services in the state. N.Y. C.P.L.R. § 302(a)(1).

a "substantial nexus" between the transaction of business itself and the claims resolved in

arbitration.  *D.H. Blair & Co., Inc., v. Gottdiener*, 462 F.3d 95, 105 (2d Cir. 2006).

Even liberally construing Parolise's Petition, the sole nexus that Parolise asserts to New

York is that the Arbitration was filed here and that the "arbitration *is in* New York[.]"  (ECF No.

5, at 15.)  At best, the relief that Petitioner seeks is proximately related to an arbitration that

purportedly arose in New York.  But, as discussed above, the Arbitration is not seated in New

York and the Interim Award was not "made" in New York.  Even if the Arbitration were in New

York, the underlying conduct at issue in the Arbitration has no "articulable nexus" or

"substantial relationship" to PRA's business activities in New York.  *See Bristol-Myers Squibb Co.*

*v. Super. Ct.*, 137 S. Ct. 1773, 1782 (2017) (emphasizing a necessity to relate the litigation forum

and the location of the harm).

Furthermore, even assuming that PRA had purposefully availed itself of the privilege of

operating in New York and that a sufficient nexus existed with Parolise's request for relief,

exercising personal jurisdiction over PRA would be unreasonable. In determining the

reasonableness of the exercise of personal jurisdiction, the Supreme Court has instructed that

the following factors are relevant to the inquiry: (1) the burden that the exercise of jurisdiction

will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3)

the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial

system's interest in obtaining the most efficient resolution of the controversy; and (5) the

shared interest of the states in furthering substantive social policies.  *Asahi Metal Indus. Co. v.*

*Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113 (1987).

New York has no, or very little, interest in the adjudication of this case. Neither party is a citizen of New York, and Defendant's existing contacts with New York are not related to Parolise's claims. In *Asahi*, the core dispute involved liability indemnification and the Supreme Court rejected the Supreme Court of California's argument that the State maintained an interest in protecting consumers by enforcing foreign manufacturer compliance with California's safety standards. *Id.* at 114-15. Here, New York's primary interest would be in resolving Petitioner's procedural unfairness claims with respect to the New York-based arbitrator. But Florida, where Petitioner is domiciled, or Virginia, where defendant maintains its principal place of business, maintain significantly greater interest in the resolution of Parolise's petition for vacatur because the events giving rise to the Arbitration arose in those states and because those states oversee the conduct of the parties. Thus, New York's legitimate interest in the dispute is "considerably diminished." *Cf. id.* at 114.

This Court asserting personal jurisdiction, additionally, is no more convenient or efficient than alternative fora and Petitioner's interest in obtaining relief would not be unduly undermined if this Court failed to recognize personal jurisdiction over PRA. The credit card agreement involved in this dispute includes a choice-of-law provision that selects Utah law. (ECF No. 5-5, at 7.) It is unclear whether another state's courts would be more adept in evaluating Parolise's claims in light of Utah law, but Parolise has not demonstrated why this Court would be situated, at least as well, as other courts to do so. Moreover, Parolise and PRA's attorneys are located in Florida. The debt collection action that gave rise to the pending Arbitration occurred in Florida, and events subsequent to that action have likewise occurred in Florida. Although Petitioner claims that the Arbitration occurred in New York, Petitioner bears

the burden of demonstrating New York is more convenient for witnesses or producing other evidence – a burden she has not met. *Metro. Life Ins. Co.*, 84 F.3d at 574. Petitioner claims that "most witnesses" are in New York and in support of such assertion lists Arbitrator Heitler as well as two employees of JAMS who are located in New York. (ECF No. 46, at 6.) But Petitioner does not explain why the JAMS employees would possess any knowledge relevant to her claim, nor does she demonstrate that witnesses in the *underlying dispute* are located in New York. The totality of circumstances, thus, suggest that an alternative forum would be more convenient in the evaluation of Petitioner's claims while also not unduly prejudicing Petitioner's ability to obtain relief.

Finally, the shared interest of the states in furthering substantive social policies weighs slightly against the exercise of jurisdiction. The parties are physically located in Florida and the effects, if any, of the Arbitration's outcome are likely to be felt in Florida. Arguably, social policies are promoted when arbitration disputes are resolved locally, rather than in out-of-state fora, because policy makers can potentially be more responsive to the outcome of arbitration disputes when those disputes occur in closer proximity to the location of the parties.

Accordingly, the *Asahi* factors counsel against this Court asserting personal jurisdiction over PRA. Because Petitioner has failed to establish that this Court's assertion of personal jurisdiction would comport with the requirements of due process, the Court lacks personal jurisdiction over PRA.

## MOTION TO STAY

Petitioner seeks to stay the Arbitration she commenced, suggesting that the Florida State Court decision granting her motion to compel arbitration was somehow improper and

also suggesting that she will suffer irreparable harm if the Arbitration continues without a full evidentiary hearing on the alleged forged documents. Petitioner asserts that she is being forced to defend an arbitration complaint that she never agreed to.

As discussed above, this Court lacks subject matter jurisdiction over this action and lacks personal jurisdiction over PRA. Thus, it cannot adjudicate the merits of this case or Petitioner's motion to stay.

Further, Petitioner herself initiated arbitration and cannot now change course or take a different position than she took in Florida state court. She has waived any objection to arbitration. *Dedon GmbH v. Janus et Cie*, No. 10 CIV. 04541 CM, 2010 WL 4227309, at *7 (S.D.N.Y. Oct. 19, 2010), *aff'd*, 411 F. App'x 361 (2d Cir. 2011); *Int'l Longshoremen's Ass'n, AFL-CIO v. W. Gulf Mar. Ass'n*, 594 F. Supp. 670, 674 (S.D.N.Y. 1984); *Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that PRA's motion to dismiss be GRANTED and that Parolise's motion to stay be DENIED for lack of jurisdiction.


Dated: New York, New York
       August 26, 2024

                              Respectfully submitted,

                              _____
                              KATHARINE H. PARKER
                              United States Magistrate Judge

<u>NOTICE</u>

**Plaintiff shall have seventeen days and Defendants shall have fourteen days from service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C)(mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). A party may respond to another party's objections after being served with a copy. Fed. R. Civ. P.72(b)(2).**

**Plaintiff shall have seventeen days to serve and file any response. Defendant shall have fourteen days to serve and file any response. Any objections and any responses to such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Gregory H. Woods at the United States Courthouse, 500 Pearl St., New York, New York 10007, and served on the other parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods. The failure to file timely objections shall result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**